UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LANNY JAY,

        Plaintiff,

  v.

KAMALA HARRIS,

        Defendant.

No. C 07-01544 MHP

**MEMORANDUM & ORDER**
Re: Defendant's Motion to Dismiss

On March 19, 2007, Lanny Jay, an attorney representing himself, filed a complaint against Kamala Harris, District Attorney of San Francisco, California, alleging equal protection and due process violations resulting from the failure to investigate his brother's death. Now before the court is defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiff Lanny Jay filed this action against District Attorney Kamala Harris in connection with the 2005 death of his elderly brother, Barry M. Hershkoff. Plaintiff alleges that "Sue K.", a realtor with Pacific Union Real Estate, poisoned Hershkoff and has murdered other elderly gentlemen as well. Compl. ¶¶ 7–9. The inquiry into these alleged crimes was prevented, plaintiff argues, by defendant's supposedly clandestine policy of prohibiting the investigation and prosecution of "circumstantial homicides," which plaintiff alternatively characterizes as crimes lacking "bloody bodies." Id. at ¶ 6; Opp. at 7. Defendant allegedly extended this policy to both the

San Francisco Police Department's homicide unit and the San Francisco Medical Examiner.  Compl. ¶ 11.  Plaintiff seeks to enjoin defendant from maintaining this policy, or any policy, that prevents or discourages police investigations of suspected homicides, while also seeking attorney's fees and court costs.  Relief Sought ¶¶ 1–7.  Defendant now moves to dismiss plaintiff's complaint.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In examining the claim's sufficiency, as opposed to its substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, ___ U.S. ____, 127 S. Ct. 1955, 1960 (2007).  Dismissal can be based on lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

DISCUSSION

I.      Standing

Under Article III of the United States Constitution, federal courts cannot entertain a litigant's claims unless that party demonstrates concrete injury, which satisfies both the constitutional and prudential standing requirements.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To

2

1  meet the constitutional requirements, a plaintiff must show that (1) he has suffered an "injury in
2  fact" that is "concrete and particularized" and "actual or imminent", (2) the injury is fairly traceable
3  to the challenged actions of the defendant, and (3) "it [is] 'likely,' as opposed to merely
4  'speculative,' that the injury will be redressed by a favorable decision." Id. at 560–61 (internal
5  quotations and citations omitted).  Prudential requirements for standing include (1) whether
6  plaintiff's alleged injury falls within the "zone of interests" protected by the statute or constitutional
7  provision at issue, (2) whether the complaint amounts to generalized grievances that are more
8  appropriately resolved by the legislative and executive branches, and (3) whether the plaintiff is
9  asserting his or her own legal rights and interests, rather than those of third parties.  See Desert
10  Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1179 (9th Cir. 2000); Gladstone, Realtors v.
11  Village of Bellwood, 441 U.S. 91, 100 (1979).

12  Plaintiff acknowledges that Hershkoff lacks standing because the alleged violation took place
13  after he passed away.  Opp. at 18.  A person's rights cannot be violated after death.  See Guyton v.
14  Phillips, 606 F.2d 248, 250 (9th Cir. 1979) (holding that the definition of "person" in the context of
15  constitutional protection is limited "only to a living human being").  The law also does not provide
16  remedy for those decedents whose deaths — rightly or wrongly — were not investigated.  Estate of
17  Cartwright v. Concord, 618 F. Supp. 722, 730 (N.D. Cal. 1985) (Legge, J.) ("[T]he civil rights of a
18  person cannot be violated after death, and therefore the scope of an investigation after death is not
19  actionable.").  As such, the decedent in this action has not suffered a legally cognizable injury,
20  failing the first constitutional requirement for standing.  Any claim brought on behalf of Hershkoff is
21  not actionable.

22  Plaintiff also lacks standing to bring these claims on behalf of himself.  First, assuming
23  defendant acted within the scope of her prosecutorial duties, plaintiff lacks standing because private
24  individuals cannot compel prosecutors to file suit unless they have, or will, sustain direct injury.
25  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Taisacan v. Camacho, 660 F.2d 411, 414 (9th
26  Cir. 1981).  Plaintiff has no legally recognized interest in the prosecutor's decision whether or not to
27  bring a legal claim against another individual.  Linda R.S., 410 U.S. at 619 ("[A] citizen lacks
28

1   standing to contest the policies of the prosecuting authority when he himself is neither prosecuted or
2   threatened with prosecution."). Plaintiff also lacks a legally recognized interest in determining the
3   prosecutorial policy of the District Attorney. Roe v. City and County of San Francisco, 109 F.3d
4   578, 583 (9th Cir. 1997) (quoting Haynesworth v. Miller, 820 F.2d 1245, 1269 (D.C. Cir. 1987))
5   ("[T]here is 'no meaningful distinction between a decision on prosecution in a single instance and
6   decisions on prosecutions formulated as a policy for general application.'"). Further, Plaintiff would
7   also lack standing to challenge the investigative policy of the police, were he to bring an action
8   against them for failing to investigate his brother's death. See *infra* at II.B.

9   Second, if defendant acted outside the scope of her prosecutorial duties, as alleged, plaintiff
10  still cannot pursue this claim because he seeks an inappropriate remedy. In his complaint, plaintiff
11  argues that "meaningful access" to the criminal justice system has been foreclosed by defendant's
12  policy. Compl. ¶ 18(c). In making this argument, plaintiff cites numerous sections of the California
13  Penal Code, arguing that defendant's "closed loop" denies him the benefit of these laws. As
14  defendant points out, however, most of the statutes cited revolve around the rights guaranteed the
15  victim (here, Hershkoff) and all are framed within the context of an ongoing prosecution. In order
16  for these benefits to be restored, defendant would need to prosecute "Sue K." for Hershkoff's
17  murder. However, plaintiff does not seek a writ of mandamus to compel this prosecution, and he
18  acknowledges that the "prosecutor's prosecutorial decisions cannot be challenged." Opp. at 19.
19  Instead, plaintiff requests a blanket injunction to prevent the enforcement of defendant's current
20  policy. This remedy would not "likely" provide a solution for the injury alleged, as required under
21  law; instead, it might provide a future cure for others similarly situated. Mere speculation regarding
22  the remedy's effectiveness is insufficient, and the lack of a nexus between the harm alleged and the
23  redress sought deprives plaintiff of standing to pursue this action. Lujan, 504 U.S. at 560.
24  Therefore, regardless of the scope of defendant's policy, plaintiff has failed to establish standing to
25  bring the asserted claim and his complaint must be dismissed.

4

## II. <u>Plaintiff's Constitutional Claims</u>

Even if plaintiff did have standing, his constitutional claims are not legally viable and his claim still must be dismissed.

### A. <u>Equal Protection Claim</u>

The Ninth Circuit has held that 42 U.S.C. section 1983 ("section 1983") claims which are "based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." <u>Monteiro v. Tempe Union High Sch. Dist.</u>, 158 F.3d 1022, 1026 (9th Cir. 1998) (citing <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 58 (9th Cir. 1978)). The phrase "discriminatory intent" is one that requires more than a mere disregard of the potential consequences of a policy decision. The District Attorney in this action must have "selected or reaffirmed [her] particular course . . . at least in part 'because of,' not merely 'in spite of,' its adverse effects" upon the elderly and disabled. <u>Personnel Adm'r of Massachusetts v. Feeney</u>, 442 U.S. 256, 279 (1979). Further, in order for plaintiff's disparate impact claim to succeed, he bears the burden of demonstrating that defendant intended this discriminatory effect. <u>See id.</u> at 272; <u>McGowan v. Md.</u>, 366 U.S. 420, 425–26 (1961); <u>Hodel v. Ind.</u>, 452 U.S. 314, 331–32 (1981). In the present action, plaintiff does not carry this burden.

Plaintiff has failed to plead that the defendant enacted this alleged policy with an eye towards discrimination. In fact, plaintiff never argues that defendant intended to single out the elderly or disabled for disparate treatment. Instead, he claims that she enacted the current policy as a means of "insulat[ing] [herself] from having to decide whether or not to prosecute homicides that she perceives as difficult to prove." Compl. ¶ 11(d). While plaintiff intuits that the impact of this procedure on the elderly and disabled is a "logical conclusion," Opp. at 16, he makes no allegations that this conclusion was a motivating factor for the policy's enactment. The court need not accept as true unsupported and conclusory statements. <u>Sprewell</u>, 266 F.3d at 988. A disregard of potential consequences on the part of the defendant is insufficient to create an equal protection claim; she must have chosen her course of action, at least in part, because of the damaging result on a protected

5

class. Feeney, 442 U.S. at 279. Because plaintiff has made no allegations in this regard, he has failed to assert "enough facts to state a claim to relief that is plausible on its face." Twombly, ___ U.S. ____, 127 S. Ct. at 1960. Accordingly, plaintiff has failed to state a claim under the equal protection clause.

### B. Substantive Due Process Claim

Plaintiff also fails to state a valid due process claim because the harm he alleges — the deprivation of prosecution-related rights under California state law, discussed *infra* — does not rise to the level of a liberty or property interest covered by section 1983. See, e.g., DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195 (1989) ("[D]ue Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests...."); Gomez, 757 F.2d at 1006 (no recognized right to a properly conducted police investigation); Linda R.S., 410 U.S. at 619 (no recognized right to request the prosecution of another). Cf. Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 12 (1979) (requiring case-by-case evaluation of state statutes to determine if they create a federally-protected liberty interest). Further, even if plaintiff had brought a legitimate substantive due process claim, it would still fail.

Substantive due process protects individuals from government infringement of any fundamental liberty interest "unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). A finding that the right in question is fundamental invokes the strict scrutiny standard of review. Troxel v. Granville, 530 U.S. 57, 59 (2000). However, if a legislative classification or distinction does not burden a fundamental right, courts "will uphold [it] so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996). A properly conducted police investigation is not a fundamental right. Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curium) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."). Other courts have also

1  found that negligent police investigations do not give rise to actionable claims. Frost v. Fuquay, No.
2  CV-06-28-S-BLW 2007 U.S. Dist. LEXIS 34875 (D. Idaho May 11, 2007). See also Daniels v.
3  Williams, 474 U.S. 327 (1986) (prison officer's lack of due care did not create a cause of action).
4  Since plaintiff's claim does not demonstrate that a fundamental right has been denied, there need
5  only be a rational relationship between defendant's policy and a legitimate state interest. "[A]ny
6  conceivable rational basis" is sufficient justification for the alleged classification to pass this test.
7  F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 309 (1993). Cf. Gamble v. City of Escondido, 104
8  F.3d 300 (9th Cir. 1997) (rubric for evaluating due process and equal protection claims under
9  rational basis test is the same).

10  Courts have traditionally granted prosecutors deference, as prosecutorial policy
11  determinations are, by their very nature, deeply connected to a consideration of public interests and
12  safety. Roe, 109 F.3d at 584. As such, although defendant does not articulate any specific
13  justifications, this court similarly finds that the alleged policy could be justified by its relation to
14  public welfare.

15  Courts have also tested substantive due process by asking whether the government's conduct
16  is "so brutal and offensive" that it "shocks the conscience." County of Sacramento v. Lewis, 523
17  U.S. 833, 847 (1998) (quoting Breithaupt v. Abram, 352 U.S. 432, 435 (1957)). The categories of
18  conduct that judicially "shock the conscience" are far more "brutal" and "offensive" than the
19  nonviolent policy at issue here. See, e.g., Rochin v. California, 342 U.S. 165, 172–73 (1952) (forced
20  pumping of a suspect's stomach offends due process and "shocks the conscience"). This court
21  therefore cannot entertain plaintiff's substantive due process claim, which falls short of this
22  alternative litmus test for review as well.

24  III.  Immunity
25  Generally, a district attorney's decision not to prosecute is not subject to review by the
26  courts. I.C.C. v. Bhd. of Locomotive Eng's, 482 U.S. 270 (1987). See also Broam v. Bogan, 320
27  F.3d 1023, 1029 ("If the action was part of the judicial process, the prosecutor is entitled to the

7

protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights."); In re Gruntz, 202 F.3d 1074, 1086 n.13 (9th Cir. 2000) ("[W]e have eschewed general examination of prosecutorial motives.") (en banc); Roe, 109 F.3d at 583 ("[A] prosecutor is entitled to absolute immunity for the decision not to prosecute."). The same standard applies in the present action, as long as defendant stayed within the scope of her duties. Goldstein v. City of Long Beach, 481 F.3d 1170, 1173 (9th Cir. 2007) ("[C]onduct is not shielded by absolute immunity simply because it is performed by a prosecutor."). The Ninth Circuit in Goldstein also noted that while a policy decision on the part of the prosecutor may be covered by absolute immunity, such immunity is not granted to all policy decisions. Instead, "the critical factor remains the nature of the challenged policy and whether it falls 'within a prosecutor's judicial function.'" Id. at 1175. Additionally, the public official bears the burden of demonstrating that absolute immunity is warranted. Id. at 1173.

As the defendant has dropped her qualified immunity claim, this Motion will only address the absolute immunity claim. On its face, a decision, if there be such, not to prosecute circumstantial homicides seems to fit squarely within the prosecutorial function of the District Attorney's office. However, plaintiff also claims that the failure of the San Francisco Police and Medical Examiner's departments to investigate circumstantial homicides is a policy "created and put in place" by the defendant and is "maintained and followed at her behest and insistence." Compl. ¶ 11(c). Such a policy, if shown to exist, would extend outside the scope of a prosecutor's duties. As the Ninth Circuit explicitly stated, "prosecutors do not have absolute immunity for advising police officers during the investigative phase of a criminal case, preforming acts which are generally considered functions of the police [or] acting prior to having probable cause to arrest...." Goldstein, 481 F.3d at 1174. Similarly, defendant Harris would not have absolute immunity for instructing the Police Department and the Medical Examiner's office not to investigate a specific subset of deaths. Accordingly, absolute immunity is not available. This point is rendered moot, however, because plaintiff lacks standing and has not brought any legally cognizable claims.

CONCLUSION

      For the foregoing reasons, defendant's motion to dismiss is GRANTED.

Dated: July 5, 2007

                                          MARILYN HALL PATEL
                                          United States District Court Judge
                                          Northern District of California

**ENDNOTES**

1. All facts cited herein are taken from the complaint unless otherwise noted.